Good morning, Your Honors. I'm Johnny Norris. I represent the appellant, Susan Fitzpatrick, in this case. May it please the Court. This is the only case I've seen so far this morning that I think involves pure questions of law, and the question, of course, is the retroactivity of the 2016 amendments to the UCL provision on made in America, made in a country of origin representations. And so it involves, more than anything else, characterization. If you characterize, as the district court did, the amendment as a repeal of a right that was a pure statutory right— As a repeal, did you say? If you characterize this as a repeal— Repeal, okay. As the district court did, and I'm sorry, let me point this up at me a little bit more. If you characterize it as a repeal, then you naturally go down the progression of that line of cases that talk about legislative repeals, I lose. On the other hand, if you characterize this as an amendment, as a change in the law, then you're talking about the other group of cases, and I've got — I was looking at the two stacks over the last few days. They're about the same size. Then you're looking at those cases that say that you presume that a law applies prospectively only, and that there is a presumption against retroactivity. And so which set of cases should this Court apply? And I think in looking at that, and I think the panel has to think about which line you're going to go down, because if the district court in this case and other district courts in California that have ruled the same way on this statute, once you start down the repeal path, then inevitably you're going to reach that conclusion. But I think those cases, the district court in this case and those other cases that have ruled that the change in the law in 2016 constituted a legislative repeal, I think they skipped a step. First, you have to figure out what was the legislature's intent. And the law is clear. The California cases say — I'm sorry. Intent or what the statute said? I'm sorry? Intent. The intent. Why intent? Because you have to determine whether the legislation constitutes a substantial reversal of legislative policy. I'm sorry. Which statute? Are you talking about the subsequent statute? Yes. If the change in the law, if the 2016 amendment — So you're not going back to the original statute? Our claims arise under the original statute. Okay. I just wasn't sure which intent you were looking at. Right. Well, the original statute was enacted in 1961. And so the subsequent attempt — there were some subsequent attempts to change it. And as the sponsor of the bill that made the 2016 amendment said, the sponsor of that bill said, well, in 1961 when that statute was first passed, the globalization of the world economy was nascent. It hadn't gotten traction yet. You didn't really see foreign ingredients in American goods. Now, with, you know, my iPhone here being made in China and the entire globalization, the California legislature made a decision that times had changed. In fact, they started looking at that in 2012. They considered a similar amendment in 2012. They decided, no, we're not going to do it again, do it yet. They did the same thing in 2013, and then they did the same thing in 2014. So, counsel, before 2016, this was basically a strict liability statute, right? If there were foreign-sourced ingredients in there, then it was a strict liability statute. I agree with that, Judge. Okay. And with the amendment in 2016, it is no longer a strict liability statute that you are allowed to have between 5 and 10 percent of foreign-sourced ingredients in any product and still be able to label it as made in the USA. Is that correct? Well, no, I think with the statute — it's a strict liability statute if it's less than five. If it's less than five, then you're able to — then at that point, you're able to label it as made in the USA. Under the UCL, which is only one of the statutes at issue in this case, if it's between 5 and 10 percent, then you have to show — then that's where you put a burden on the defendant to show that you can't really get this ingredient anywhere else other than outside the United States. And the ingredient in this case actually probably falls in that category. The tapioca starch is made from the Kosovo root, which just doesn't grow outside the tropical climates. Exactly. And so — but the question is — So — I'm sorry? We went from strict liability, right? So if you had anything at all in there that was foreign-sourced and you put a made in the USA label on it, that's it. We're done. Right? And in 2016, with the amendment, you could have up to 5 percent and stick a made in the USA label on there and have no problem. And between 5 and 10 percent, as long as you could show that the cassava plant doesn't grow in the United States and can't grow in the United States, you can put a made in the And the legislature expressly permitted that action. I disagree with a couple of things you said, Judge. I agree that the UCL changed the way you described it. I don't think that the UCL is the only statute at issue here because we also have claims here under the CLRA. I would also disagree with — And that's where we get to the safe harbor. That's right. But I also disagree with your characterization of the amended statute as expressly permitting it. All it says is that you can do it and this section of this statute won't apply. It doesn't say that for all purposes under California law that we hereby decide that — which is what you would have to have to have a safe harbor argument, which I think the district court aired here by going the safe harbor route on the CLRA claim. But that's not what the statute says. What the statute simply says is that this section doesn't apply in these circumstances. Well, what it says is you will not be liable if you meet these exceptions. That's what it says. Well, Your Honor, I believe what it says is that this section will not apply. Do you have a California case that passes this difference between a repeal and an amendment? I don't know of a case where — you know, it seems like the cases where the earlier California cases, they talked about — you talked about a complete reversal in legislative philosophy and things like that. The later cases seem to sort of assume that almost any change would be — would constitute a repeal. And that's why I want to talk about the cases, if I could. These are the California cases. California cases. Not Federal District Court. Not Federal District Court. There's really three that I want to talk about. One is the Ellsner case, which is a 2005 case by the California Supreme Court. We've cited it in our briefs. And in that case, the question was, in a private lawsuit, in 1971, the California legislature had passed a statute that says in a tort action, you cannot put — and specifically in a workplace sort of personal injury context, you cannot put into evidence the provisions and regulations that — under Cal OSHA. You can't do that. Then later, there was a — I believe it was a 2003 or 2004 amendment that said, well, you know, never mind. The rules of evidence will simply apply. And specifically the rule that says if you could show some sort of legal — legal illegality in what you've done, it constitutes negligence per se. And so the Court there said — so before the amendment occurred, there was an accident and the guy was injured. He sued. And then the question — then later the statute was amended so that the rule was that you should have admitted these. The trial court said, no, I'm not going to let those in. I'm not going to let the standards of Cal OSHA in to show negligence per se. And the California Supreme Court reversed that. Now, let's think about that for just a minute. If you talk about — if you are under the impression that any change in the world can constitute a legislative repeal, well, if they had analyzed that case, well, in that case, obviously being able to put these — having — have not — if you're a defendant and you don't have to defend against these Cal OSHA standards, you stand a much better chance in front of a jury on a personal injury claim. But as you would characterize it if you were looking at it and assuming this was a legislative repeal, well, that right got taken away from the defendants. It was taken away from them, and now they've got to defend cases under a much more onerous legal standard where the Cal OSHA regulations are in there. So if you analyze that as a repeal, well, yes, there was a right. It was a purely statutory right because that right, the 1971 statute that said you cannot have — you cannot have those sorts of standards in evidence, that was against the common law. It was a purely statutory right. It was taken away by the legislature in the subsequent amendment. And so the California Supreme Court then — our position is, is that cases like that represent the distinction, and that's the demarcation. Now, the other — many of the other cases, me being — this is a — I'm not in California all that frequently. I was somewhat amused that a lot of these cases arose out of California's change in social norms surrounding marijuana. There are cases, for example, the Rialto — Rialto Unified School District case where there was a change in legislative philosophy. They said, as a matter of our legislative philosophy, that we no longer want all the opprobrium and bad sanctions to attach to somebody having a minor pot possession charge. There was a teacher that was fired for pot possession — I mean, he was arrested for pot possession. He was a teacher. The school district fired him. And then, while his case was pending, the legislature said, well, you know, we don't have those attitudes about marijuana anymore, and so we're going to pass a statute that makes people like school districts not be able to have the right to terminate you just for a minor pot possession charge. And the Fourth District Court of Appeals in California said, you know what, that worked, a legislative repeal, and he gets — he gets to go back even though that statute was passed way after he was terminated. That is an example of a philosophical change. So, counsel, why doesn't the Zipperer v. County of Santa Clara case apply? I don't think that case has any application for a number of reasons. It does have some very broad language, and I think that it is the language from the Zipperer case that the district courts are using to support these legislative repeal orders that they're entering. But if you look at the facts of the case, in that case, there was a statewide statute that said you can't grow or maintain trees that were going to block out, you know, under the Solar Shade Act. But it contained a specific provision that said if a local government wants to totally opt itself out of liability for that, it can do so. And the county did that. And after it did that, then the question was, well, was that a legislative repeal? Well, with regard to trying to sue the county, it certainly was. It was the county's complete change in philosophy, that it no longer wanted to be liable for keeping trees growing that's going to block out sun from the people's solar panels. And so I think that in that circumstance, as compared to here. So why isn't this a change in philosophy? This is not a change in philosophy. This is a change in philosophy, to me, is where you say, you know what, we used to have all these bad attitudes about pot, but, you know, we're more, you know, we're a little bit more progressive now. We don't have those attitudes. Versus what you'd have, in order to have the same sort of change in philosophy, you would have to say, well, you know what, we should have gone all the way back to 1961 and we would have disagreed with that legislature in 1961 and would have said, well, you should have had that de minimis, you know, sort of safe harbor thing way back then. They didn't do that. The result didn't come about as a result of a change in philosophy. It came about as a result of the change in the world, in the globalization of the world economy. And so it wasn't a change in philosophy. The philosophy is still there. We still don't think you should be making made-in-the-USA assertions and advertisements that are not true, but they've recognized that it's harder, starting going forward, we recognize now that it's harder to comply with that, with the globalization and who knows what ingredients came from where. You've got about a minute left. Do you want to save it? I will save it. Thank you, Judge. Okay. We'll hear from the other side. May it please the Court. Frank Rothrock for Defendant Annapolis Tyson. I'd like to share my time with Counsel for Bighart, so I'll try and move quickly. I think the issue here, at least as to the UCL cause of action, is which version of Section 17, 533.7 applies. Plaintiffs don't claim a violation of the current version that took effect January 1, 2016. They had a chance to amend to allege a violation of the current version. They didn't take that opportunity. So the issue is, does the statutory appeal rule apply? And if not, why shouldn't it apply? Plaintiffs don't claim they have vested rights. They don't. It's not really a repeal, right? A repeal would say, we repeal. Right? Yes. So that's why it shouldn't apply. I mean, you may persuade us it should apply anyway, but it's not an open-shut question. If they had said, this section is now repealed, that would be a repeal. Why would a statute that stays in place, and they make a de minimis sort of exception to it, count as a repeal? And do you agree, by the way, that if it's not a repeal, if it's an amendment, it would be only applicable prospectively? No, I wouldn't agree with that, Your Honor, for this reason. Whether it's an amendment or whether it's just an abrogation of the statute, replacement with a new statute, we would look to the substance, not the form of it. We have the Chapman case cited in our brief that involved an amendment to the California Constitution. So you don't think it has to be a repeal? No. Substantively, it's a repeal in the sense that the right to pursue a claim under the prior action no longer exists? Semantics? It no longer exists for some people. The action exists. You can still sue if something is mislabeled. Somebody can still break a claim. Now, fewer people can do it, but it doesn't mean the claim is not available. Well, the right to pursue a claim under 17533.7 where the foreign source content is less than 5 percent or 10 percent of the final wholesale value, that right no longer exists. I mean, we have the text of the statute. We can look to legislative history that plaintiffs have cited, but just starting with the text of the statute, subdivision C now says that this provision, quote, shall not apply, close quote, where you have the 5 and 10 percent exception. They create an exemption, so like a tax law. And if we... Congress amends the tax laws and creates a deduction, for example. And then, you know, they increase the amount, they decrease the amount. We don't usually view this as a repeal of a statute. I don't see how this is a repeal. It's an amendment. It may be a significant amendment. It may not be a significant amendment. I don't know. We have context, other context. But you say you would win even if it were an amendment? I don't think it matters whether it's an amendment or the whole statute is gone because the right to pursue an action under this provision, under the UCL, no longer exists. The legislature has made it clear... Well, just to make it perfectly clear, many amendments will cut out, almost all amendments will cut out some people or add people that weren't covered before. So if you say, well, it's a repeal as to the people that are covered, then you're sort of begging a question there. Okay. Then, of course, everything is a repeal and then we have nothing else to talk about. A series of California courts have applied the rule. It's called the statutory repeal rule. I don't know the terminology is magic. It at least goes back to dicta in a California Supreme Court case in 1930. But what if it concludes it's an amendment? Is that then, they say, no, this is not a repeal, it's an amendment. What happens then? It has the same effect. You look to the statute, the controlling statute. If you have amended the underlying statute, you would look to the amended statute, which here says that the unlawful provision... In your view, all amendments, all changes to the statute are prospective. That's what you're saying. Anytime you amend the statute, it... I'm sorry. No, the general... It's retrospective. The general rule would be no retroactivity. But when you're taking away a statutory remedy or right or cause of action dependent on a statutory repeal rule, which is an exception to the rule against retroactivity, then comes into play and takes effect. So you do have to have a repeal. You do have to have something that you classify as a repeal. Otherwise, you fall under the general rule, which is that it applies only prospectively, right? You don't have to have the magic language repeal. And the repeal can take the effect of an amendment or a new statute. But you have to have something that we conclude is a repeal. That's been taken away, as here, the right to sue. So, counsel, the amendment can operate as a partial repeal. Is that your position? And that's what happened here. And that there's no savings clause in the amendment. And there's no vested rights here because you don't get a vested right under a claim dependent on a statute until you have a final judgment. What's your position with regard to how similar or dissimilar this case is from the Brenton versus metabolic life case that involved amendments to the anti-SLAPP statute? Right. The, as I recall, Brenton involved the addition of a commercial speech, taking commercial speech out of the anti-SLAPP arena. And that was basically a repeal of the scope of the anti-SLAPP statute where you could actually bring an anti-SLAPP motion even for commercial speech. So that would act as, in effect, a partial repeal, if you will. So I think it aligns. It's probably not the most analogous factually here, but it's an example of it. I mean, I — If this had been the other way around — I'm sorry? If this had been the other way around and the statute had been amended to make it broader so that there was a blanket prohibition, then would — there would be a claim here? I don't think so because then the rule of retroactivity would apply. I'm not aware of any case that's flipped the statutory repeal rule around to say there's a statutory additor rule and that that's an exception to retroactivity. I'm not aware of any case that's — Repealing an exception is also a repeal, right? Yeah. Well, I don't — there I think it's an additor. You're adding a new statutory basis to bring a claim. Here you're taking away a formerly available statutory basis. The rule is your client always wins? Is that the rule? We'd all like that rule. It sounds like the rule. I mean, because you're just playing with words. If you take away an exemption, you know, you can — why isn't that a repeal? Well, the basic rule is — But I think, counsel, though, that if it were flipped, right, and now it went from there are these exemptions and now it's strict liability, before that, Lena wouldn't have a right under the statute, right? No. Because you'd have this 5 to 10 percent of foreign-sourced ingredients allowed. There wouldn't — she wouldn't have had a cause of action. And then she would. She does. And now she does. My guess is if the legislature flipped it around, she would go out and buy some more pet food and we'd have a new lawsuit. Exactly. It would have established a cause of action that she wouldn't have had before. Well, no, because you might change the formula and she might say, but look, I bought the lawsuit and I'm claiming for damages I had from before, so from having bought the cat food before. So I don't think that works at all. Well, I don't. Why wouldn't she be entitled at that point to say, okay, this is now the law of decision today. Lucky me. They did away with your safe harbor and now you pay. Again, it's establishing a right to sue and the retroactivity rule applies. I didn't make the rule, but California State Court has adopted it. I guess I'm having trouble understanding why the retroactivity rule applies there and not here, other than that you like it that way, that this benefits your client. Well, I do like it that way, but it's because the California courts have established a statutory repeal rule and it's applied irrespective of whether it's an amendment or a new statute or you completely take away a statute. Counsel, isn't it because that if the California legislature imposes liability on a defendant, you need to have notice of the liability. And that's why it's not retroactive in that it's prospective. It would raise big due process issues, for example. Exactly. It's a kindex post facto. If I could just respond briefly to the philosophy, the same philosophy argument of counsel. I think we should be judged by the text of the statute, but if you go to legislative history that plaintiffs brought out, and I would invite the Court's attention, it's to page 19 of the excerpts of record, which is a California Senate report. I mean, it spells out that, quote, may be labeled made in USA, end quote, when you meet the 5 and 10 percent requirements. And it goes through the intent of this legislation to bring California in line with the other 49 states and with the FTC federal government standard. So I think there is a change in philosophy here. There was a reason why the legislature put in the 5 and 10 percent exceptions and why it called that conduct or goods that comply with those requirements out of the category of being unlawful under the statute. But at the time that plaintiff did her shopping, the statute was applicable. That's right. And those cans, if you believe her claims, were in violation of California law. We wouldn't concede that. No, I mean, that's what she said. That's why I said, if you believe her claims, which we have to assume at this point. So you're just quibbling with me in order not to give me a straight answer. I'll try and give you a straight answer. It's true. I don't think you are. I said, if you accept her claims, which you must at this stage, right? Fine. Then the cans that she bought were in violation of California law at the time they were bought. True. Okay. Which begs the question of which version. Why don't you let me finish? I'm sorry? I'm sorry. Please finish. So, in fact, what you're trying to do is you're trying to say, is this things which were illegal, you want to sort of say they've been whitewashed, which if the claim is true is illegal, are going to be whitewashed by this legislation, even though past conduct, according to them, violated California law. I'm just having trouble with a concept as to why the new legislation, which talks about conduct in the future, you know, is a law that gives notice of the future, should whitewash illegality in the past. I suppose your Honor's argument or position challenges— I'm asking a question. Why don't you persuade me that, you know, this illegal conduct should be whitewashed at this point because the legislation changed the law for future— Because we're applying California law here in the California Supreme Court in a series of cases, Mann and Younger, the marijuana cases, and in others have said that in this context the new statute applies. It's called the Statutory Appeal Law. You don't dispute that if what the alleged complaint is true, your client was violating the law in selling the pet food as a debt. That's true. You don't dispute that. No, that's true. But their claim is based on a statute. I understand. I just want to make that clear. We've got a few seconds left. Why don't you let your co-counsel have them. Thank you. Good morning, Your Honors. May it please the Court. My name is Richard Fama from the law firm of Cozen O'Connor, and I represent Apelli Big Heart Pet Brands. There's been a lot of discussion about whether the amendment to the statute is an amendment or serves as an appeal. An appeal. I'm sorry? A repeal, not an appeal. I'm sorry. Yes, it's a repeal. Thank you, Your Honor. That's right. We're in the middle of the appeal. It serves as a repeal. And certainly an amendment can be a repeal. And in this case, we have to focus on the change to the statute and what it was. And Plaintiff's Counsel has used the phrase, was it a substantial reversal of legislative policy? And, in fact, it is. It took away a right to be able to sue. Well, no. A substantial reversal of legislative policy would be to say we repeal the law. You know, you no longer have to worry about you can label anything at all made in the USA regardless of content. That would be a reversal of policy. Creating an exception for a de minimis amount, I'm not sure that's a reversal of policy. Why is it a reversal of policy? I've never seen a case that said that an appeal cannot be a repeal. I've seen no case that says that. An appeal cannot be a repeal? No, no. I'm sorry. An amendment cannot be a repeal. I've seen no case that's ever said that. Plaintiff's Counsel has focused on the legislative history and a recognition of a global economy. If, in fact, this statute was amended because there's a recognition of a global economy, then that is a change of philosophy. The philosophy now is to bring the California statute more in line with the FTC standard governing Made in America claims, which is a virtually all or virtually all standard that applies. So, you know, it's respectfully submitted that this is a substantial reversal of legislative policy, and it's not merely, you know, just a tacked-on amendment to the statute. It goes far broader than that. I know you believe that. I can tell. And you haven't said anything that persuades me of it, but as to why I should agree with you, you want to give it one more try? I'd love to, Your Honor. I mean, you just said, oh, well, you know, this is a big repeal. But I don't know why it's a big repeal. It's a small exception. The general rule is you cannot sell stuff that's made abroad and label it made in the USA. They made a small exception for 5%, maybe 10%, which seems minimal to me. So they said, well, you know, because the global economy, you know, some things creep into domestic products, we're going to treat those as American. But it's a small change in policy. Why is that a repeal? Well, I would disagree that it's a small change in policy. I would say it's a fairly substantial change in policy, because we went from an absolute zero-tolerance policy to something, you know, that's far broader than that. And 5% or 10% of a wholesale value of a product is certainly not insignificant. Okay. All right. Thank you. Thank you. To go back to Judge Kaczynski's question of if this had been the reverse, if they had added this, if they had taken away this de minimis exception and made it strict liability, would that have been, therefore, retroactive under their reasoning and my question? It's my question. I'm sorry, Judge Schroeder. He was following up on it. I thought it was your question. I'm sorry. I thought it was his question. But the question is important, because the answer was made up sort of on the fly, I think, is that, well, no, when you add stuff to what plaintiffs get, instead of taking it away, if there's an additive, then, oh, no, it can't possibly be a repeal. I will point you again to this Rialta case, the school board case. In this case, an individual. This is the school board case where the teacher was fired for smoking pot. Does it have a name? Rialta. It's the governing board. Rialta. I thought you said the reality case. Oh, no. I'm sorry. Rialta. I know Rialta. Rialta. Governing board of the. I've been to Rialta. It's the governing board of the Rialta Unified School District. I tried to forget it, but no, I'm kidding. It's a very nice place. But in that case, that teacher, who has suddenly had his right to have a wrongful termination claim revived by statute, he was given something. And so, again, in order to determine whether there is a legislative repeal, you have to look at whether it is, in fact, a change in policy. Say two more things in my, if I could, or one more thing if I could, and that is, is that the district court case, the district courts in these cases are applying this legislative repeal rule very broadly. In a litigated case involving a statute, a change in the statute is going to affect somebody's rights. It happens in every case. If the reasoning of the district court is followed in this case, then the legislative repeal rule is simply going to swallow the rule against, for the presumption that statutes are prospective only. Thank you. Thank you. Thank you. The case is highly substantive. We are adjourned. All rise.
judges: Schroeder, Kozinski, Ellis